O'Connor, Appellant, *v.* Philadelphia Suburban
Transportation Company.

Argued April 15, 1949. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*James J. Regan, Jr.,* with him *Edward D. Mc-
Laughlin,* and *Donald H. Hamilton,* for appellant.

*D. Malcolm Hodge*, with him *Hodge, Hodge & Balderston*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 24, 1949:

The question raised by this appeal is whether plaintiff was guilty of contributory negligence as matter of law.

Plaintiff, Joseph V. O'Connor, brought an action in trespass against defendant, Philadelphia Suburban Transportation Company, to recover damages for personal injuries sustained by him in a collision between a truck, driven by plaintiff while in the employ of the Penn Supreme Dairies, and a street car of the defendant company. A compulsory nonsuit was entered on the ground of plaintiff's contributory negligence. Plaintiff appeals from the refusal of the court below to take off the nonsuit.

Viewing the evidence in the light most favorable to the plaintiff, as we are required to do, the facts are: The defendant company maintains double car tracks on a private right of way which runs in an east-west direction in Upper Darby Township, Delaware County. The tracks run parallel to Garrett Road for a distance and then cross, at grade and right angles, Windemere Avenue which runs in a north-south direction. The car tracks approach Windemere Avenue on a downward grade and are straight for several hundred yards to the west. A warning signal light which shows red and green was in operation at the intersection of Windemere Avenue and the tracks directly over the *center* of the tracks and the highway.

Plaintiff was operating his employer's truck west on Garrett Road at about 10:30 a. m. on November 9, 1945, a clear dry day. He made a right hand turn into Windemere Avenue and proceeded northwardly, crossing the two tracks of the defendant company. He drove about

126 feet and realizing he was lost, sought directions. Thereafter he turned around and retraced his route southwardly on the right hand side of Windemere Avenue. As he approached the crossing he was traveling at a slow rate of speed. Plaintiff stopped the truck before any part of it entered the first rail of the first set of car tracks. He observed that the warning signal was green and in his favor for crossing. He then looked for approaching trolleys *but saw none.* His view to the right or west was partially obtructed by poles, a tree, and some heavy brush, but he could see approximately two hundred (200) feet in a westerly direction up the track. After thus looking for approaching trolleys and seeing none, and with the signal light still green in his favor, he started the truck at a rate of three or four miles per hour. He again looked for approaching trolleys before his truck entered the first rail of the eastbound track. At this point, he saw for the first time, a trolley approaching from the west and moving in an easterly direction about one hundred ten (110) feet away. He immediately applied the brakes. The truck halted and the front bumper, while not across the first rail of the second set of tracks (east bound), was in the path of the overhang of the trolley. Plaintiff tried to put his truck in reverse but failed. He endeavored to signal the motorman but was unsuccessful because the motorman had his back turned. A collision occurred. The left front overhang of the trolley struck the right front of the truck. The evidence was amply sufficient to warrant a finding that the motorman was negligent. A witness, a passenger on the trolley car, testified that he saw plaintiff's truck when the defendant trolley was still fifty (50) feet away from the crossing; that he endeavored to secure the motorman's attention, but the motorman had his head turned around toward the rear of the car talking to a trainee; that no warning was

sounded by the trolley nor did it slacken its speed. The witness also testified that the signal light was red against the trolley and that the trolley was being operated at a speed of forty (40) miles per hour and that it continued for a distance of two hundred (200) feet before being brought to a stop after the collision.

It is a rule of law that travelers must look for approaching street cars before entering upon the first rail. A companion rule is that at such time the traveler must have his vehicle under such control that he can stop before getting in the path of the approaching trolley car: *Smith v. Lehigh Valley Transit Co.*, 296 Pa. 212, 145 A. 818, and cases cited, p. 214; *Carden v. Philadelphia Transportation Company*, 351 Pa. 407, 411, 41 A. 2d 667; *Leaman Transportation Corporation v. Philadelphia Transportation Company*, 358 Pa. 625, 631, 57 A. 2d 889. The learned court below, in applying the facts of this case to these principles concluded that the plaintiff did not have his truck under the control required by the law. He ruled that plaintiff was guilty of contributory negligence as matter of law and entered the nonsuit. We do not agree with this conclusion.

Contributory negligence may be declared judicially only when so clearly revealed that fair and reasonable persons cannot disagree as to its existence: Cf. *Carden v. Philadelphia Transportation Company*, supra, p. 409. The circumstances of this case do not disclose such clear violation of the duty imposed by law on plaintiff that it must be declared judicially. On the contrary, the evidence reveals that plaintiff stopped and looked before entering the tracks; that no trolleys were in sight; that he proceeded cautiously at the rate of three or four miles per hour *with the green signal light in his favor;* that upon seeing, for the first time, the approach of defendant's trolley from the west, one hundred ten (110) feet away, he did everything which a reasonable, prudent man under the circumstances could be expected to do.

There was no fixed duty on the plaintiff to stop before he passed over the east-bound rails: *Talley v. Chester Traction Company,* 227 Pa. 393, 395, 76 A. 74; *Smith v. Lehigh Valley Transit Co.,* supra, p. 215. The question whether, under the circumstances, plaintiff was contributorily negligent is for the jury: *Carden v. Philadelphia Transportation Company,* supra, p. 411 and cases therein cited. Where a driver of a motor vehicle approaches the point where trolley tracks intersect a street or highway, and with a signal light in his favor, and the driver stops and looks before crossing, and then starts to cross after observing that no trolley car is approaching within visible range, *and the signal light is still in his favor,* he is warranted in assuming that any approaching trolley which thereafter comes into view will obey the traffic signal and will not run him down: *Galliano v. East Penn Electric Co.,* 303 Pa. 498, 504, 154 A. 805; *Balkie v. Philadelphia Rapid Transit Company,* 331 Pa. 93, 95, 200 A. 52; *Zurcher v. Pittsburgh Railways Company,* 353 Pa. 212, 215, 216, 44 A. 2d 581; *Brungo v. Pittsburgh Railways Company,* 132 Pa. Superior Ct. 414, 200 A. 893; *Rea v. Pittsburgh Railways Company,* 146 Pa. Superior Ct. 251, 22 A. 2d 68. See *Dopler v. Pittsburgh Railways Co. et al.,* 307 Pa. 113, 160 A. 592, where the Court points out, at p. 118, that the *Galliano* case, supra, applies where the automobile has the signal light in its favor. See also: *Newman et ux. v. Protective Motor Service Co.,* 298 Pa. 509, 512, 148 A. 711, cited with approval in *Zurcher v. Pittsburgh Railways Company,* supra, p. 216.

Mr. Justice (now Chief Justice) MAXEY said in the *Galliano* case, supra, p. 504: "If the autoist entered the intersection first, he was justified in assuming that his right of way was superior to the street car's, even if the green light had beckoned the street car after the automobile entered the intersection. That it is the duty of a street car not yet in an intersection to yield to

the rights of other vehicles entering such intersection is settled in Pennsylvania."

In the *Zurcher* case, supra, at p. 214, Mr. Justice JONES said: "About eight o'clock on the evening of March 2, 1944, it then being dark, the plaintiff was driving his automobile eastwardly on Beacon Street. It was snowing at the time and the streets were slippery from ice. When the plaintiff had reached a point about forty feet from the first rail of the near (outbound) track on Murray Avenue, he looked to his right and saw a street car about two hundred feet away, coming northwardly on the inbound track on Murray Avenue toward the intersection. *The light in the traffic signal was showing green for travel on Beacon Street.* The plaintiff approached the crossing at a speed of approximately ten miles an hour. When he had reached the first rail of the track nearest him, he reduced the speed of his automobile to two or three miles an hour. The street car was then a hundred to a hundred and twenty-five feet away. While crossing the first track at his reduced rate of speed, he saw that the street car, which was travelling at a speed of from thirty to thirty-five miles an hour, would likely be unable to stop at the intersection notwithstanding that the signal light was set against it. Believing that a collision was inevitable if he proceeded further, the plaintiff 'slammed on [his] brakes' but, on account of the icy condition of the street, his automobile skidded into the street car, striking it on its side about the third or fourth window from the front with resultant injuries to the plaintiff for which he brought the suit here involved.

"From the foregoing recital of the facts in this case, as established by the jury's verdict, it is clear that the trial court could not have justifiably held the plaintiff guilty of contributory negligence as a matter of law. Whether he was negligent in fact was of course for

the jury to determine from all of the circumstances attending the collision." (Italics supplied.)

In the present case, plaintiff started to cross the tracks only after he observed *no approaching trolley* with the signal light in his .favor, whereas in the two cases above cited, the autoists proceeded on the green light *even after seeing the approach of the trolley cars.*

The facts in *Woomer v. Altoona & Logan Valley Electric Railway Co.,* 80 Pa. Superior Ct. 261, are strikingly similar to those in the present case, except that in that case there was no traffic light. Judge GAWTHROP said, p. 264: "He [plaintiff] saw nothing approaching from the west, although he could see seventy-five feet in that direction. He continued looking in both directions as he started to move toward the crossing in low gear at a speed of about two miles an hour. About the time the front end of his truck reached the first rail, he saw a car approaching from the west at a distance of approximately one hundred and twenty-five feet and running at a speed of eighteen or twenty miles an hour. He stopped immediately with the front of his truck extending about fourteen inches over the first rail. Before he had time to back, the car collided with the truck, pushed it out of the way and ran a square before it stopped. *Upon such facts, the questions of defendant's negligence and plaintiff's contributory negligence. were for the jury.* Plaintiff did not violate any positive rule of law. He stopped at the building line, looked and saw nothing which in his judgment should have prevented his going across the tracks. When he started again, he continued to look and stopped as soon as he saw the car. The jury was warranted in finding that he exercised due care under the circumstances and that the motorman could have stopped his car and avoided the accident if he was running at a proper speed and was looking for traffic approaching the crossing, and that the failure to do so was negligence." (Italics supplied.) In that case,

however, the judgment was reversed for a different reason.

The facts in the present case do not require this Court to decide, as matter of law, that plaintiff was guilty of contributory negligence as in cases where: the approaching trolley car was so plainly in view that if plaintiff did not see it he was negligent, and if he did see it he was negligent in driving upon the tracks when the trolley was in dangerous proximity (*Moses v. Northwestern Pennsylvania Railway Company*, 258 Pa. 537, 102 A. 166); or, where the facts clearly show that plaintiff could not have looked before crossing (*Bornscheuer v. Consolidated Traction Company*, 198 Pa. 332, 47 A. 872); or, where plaintiff approached at such a speed that he was unable to stop (*Smith v. Lehigh Valley Transit Co.*, supra); or, where he subjected himself to the manifest danger of the approaching trolley car (*Kilpatrick v. Philadelphia Rapid Transit Co.*, 290 Pa. 288, 138 A. 830; *Boyle v. Lehigh Valley Transit Company*, 150 Pa. Superior Ct. 86, 27 A. 2d 682); or, where plaintiff admitted she failed to look before entering the track (*Widson v. Phila. R. T. Co.*, 113 Pa. Superior Ct. 168, 172 A. 164. See also: *Byrne et al. v. Schultz*, 306 Pa. 427, 160 A. 125; *Reinard v. Lehigh Valley Transit Company*, 334 Pa. 343, 6 A. 2d 96; *Goldfine & Brenner, Inc., v. Philadelphia Rapid Transit Company*, 119 Pa. Superior Ct. 581, 181 A. 514; *Davis v. Pittsburgh Railways Company*, 128 Pa. Superior Ct. 393, 194 A. 402, where plaintiff blindly proceeded after observing the approaching trolley car); or, where immediately upon driving upon the tracks the collision occurred, thereby justifying the inference that the plaintiff could not have looked before entering: (*Leaman Transportation Corporation v. Philadelphia Transportation Company*, 358 Pa. 625, 57 A. 2d 889).

Defendant's negligence and plaintiff's contributory negligence were issues for the jury.

Judgment reversed with a procedendo.