Caine *v.* Collins, Appellant.

Argued December 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

232

*James M. Marsh,* with him *Gerald A. Dennehey,* and *LaBrum and Doak,* for appellant.

*James Francis Lawler,* with him *Levy Anderson,* and *Ostroff, Lawler & Baker,* for appellee.

OPINION BY WRIGHT, J., December 28, 1960:

Asbury Caine filed a complaint in trespass against Joseph E. Collins seeking to recover damages for personal injuries which occurred when, as a pedestrian, he was struck by defendant's automobile at the intersection of Broad and Oxford Streets in the City of Philadelphia. Defendant's motion for a compulsory nonsuit was denied, and a point for binding instructions was refused. The jury returned a verdict for the plaintiff in the amount of $5,000.00. The defendant filed a motion for judgment n.o.v., and the plaintiff filed a motion for a new trial limited solely to the question of damages. The court en banc declined to grant defendant's motion, but did grant plaintiff's motion. The defendant has appealed.

The accident occurred on November 3, 1956 at about 9:00 P.M. Plaintiff, aged 69 years, was returning from a visit to his oculist. He was crossing Broad Street from west to east and had safely reached the

cement island in the middle of Broad Street. He continued to cross Broad Street, and was struck in the second traffic lane east of the island. Broad Street at that point is 69 feet wide with three traffic lanes in each direction. The intersection is well illuminated by over-head mercury lights. The weather was clear and the streets dry. As plaintiff started across the southbound traffic lanes, the signal light was green for traffic on Oxford Street and red for traffic on Broad Street. The signal light then changed, and the pivotal issue at the trial was just when this change occurred. Plaintiff himself testified as follows: "I can't remember exactly whether it was a red light or not . . . I really don't remember what light it was". Ronald Walker, an attendant at a service station located at the southeast corner of Broad and Oxford Streets, testified that plaintiff was "about three-quarters of the way" across Broad Street when the light changed.

Appellant testified that he was proceeding north on the east side of Broad Street at about 25 miles per hour; that the signal light changed from red to green when he was halfway between Jefferson Street (to the south) and Oxford Street; that he was in the second lane east of the island, several car lengths behind a car being operated to his left in the first traffic lane east of the island; that the car in the first traffic lane came to a stop and appeared to be about to make a left-hand turn; and that plaintiff suddenly appeared without warning directly in front of his car. The defendant's testimony was corroborated by that of Joseph Juavinett, the operator of the car in the first traffic lane, and also by that of Benjamin Floyd, a pedestrian who was crossing Broad Street from east to west. Floyd testified as follows: "Q. Tell us what happened. A. Just before I got there, the light was red on Broad Street. Just as I entered Broad Street, they turned

green. Q. How far did you enter Broad Street? A. I'd say about one-fourth of the way, not quite to the cement divider. Q. Going east to west? A. Yes. And just as I hit the cement center, this gentleman here was crossing over and I said, 'Hey, Mister, watch those cars'. And he was walking slow and he didn't seem to hear me, and a car was coming on the inside curb I'd call it. Q. The car was coming on the inside? A. Next to the cement center. Q. When you refer to the cement center, you mean the island there? A. Yes. Q. Had you almost approached that island? A. No. When it turned green, I was about half-way there and I jumped to the island and I said, 'Hey, Mister, watch those cars'. And the car near the island was slowing down and it stopped. When it stopped, this gentleman here went right in front of this here gentleman's car, and he could not help it".

Appellant contends that plaintiff was guilty of contributory negligence as a matter of law. Although our examination of this record reveals that the weight of the evidence on the question of liability was in favor of the appellant,[1] we must view the testimony and inferences therefrom in the light most favorable to the plaintiff, who has the verdict, and we may not declare him guilty of contributory negligence as a matter of law unless it is so clearly revealed that there is no room for fair and reasonable disagreement as to its existence: *Escher v. Pittsburgh Railways Co.*, 194 Pa. Superior Ct. 66, 166 A. 2d 537. In overruling appellant's motion for a compulsory nonsuit, the trial judge stated:

---

[1] It is possible that the verdict was the result of a remark of plaintiff's counsel in his address to the jury, to which counsel for appellant vigorously objected on the ground that it "was obviously a direct attempt to show to the jury that there was insurance involved". However, appellant's motion for the withdrawal of a juror was overruled by the trial judge, whose action in such regard is not assigned as error on this appeal.

"I think it is not too clear that the plaintiff himself has established a case, but . . . the other witness, Walker, established a case". A detailed analysis of the citations in appellant's brief would serve no useful purpose. Suffice it to say that each presents a factual situation which is distinguishable from that in the case at bar. We feel obliged to affirm the refusal of judgment n.o.v. on the authority of the recent decisions of our Supreme Court in *Smith v. Pittman,* 396 Pa. 296, 152 A. 2d 470; *Frisina v. Dailey,* 395 Pa. 280, 150 A. 2d 348; and *Rutovitsky v. Magliocco,* 394 Pa. 387, 147 A. 2d 153.

We are clearly of the opinion, however, that the instant case does not present one of those comparatively infrequent situations wherein a new trial should be granted and limited solely to the issue of damages. The power to grant a limited new trial is one which should be cautiously exercised: *Salemmo v. Dolan,* 192 Pa. Superior Ct. 56, 159 A. 2d 265. Ordinarily the grant of a new trial means a new trial generally; it restores a case to the status it had before the trial took place, fully open to be tried de novo as to all parties and all issues: *Mains v. Moore,* 189 Pa. Superior Ct. 430, 150 A. 2d 549. In the words of Judge WOODSIDE in *Friedman v. Matovich,* 191 Pa. Superior Ct. 275, 156 A. 2d 608: "To draw the line so that limiting new trials to the amount of damages becomes the general rule instead of the exception will not aid, but hinder, the administration of justice". The court below relied primarily on *Cason v. Smith,* 188 Pa. Superior Ct. 376, 146 A. 2d 634, wherein a majority of this court felt that the issue of liability had been so definitely and conclusively settled by the verdict that reasonable men could not be expected to arrive at a different conclusion. That is obviously not the situation in the case at bar. The testimony in this record concerning appellant's liability made that issue at most a question for the jury.

The cases cited in appellee's brief wherein the grant of a limited new trial was approved are not controlling in the present situation. In *Van Buren v. Eberhard,* 377 Pa. 22, 104 A. 2d 98, the charge of the trial judge was prejudicial to the defendants and they, not the plaintiff, were given a second chance on the issue of damages. In *Ratcliff v. Myers,* 382 Pa. 196, 113 A. 2d 558, which presented an "anomalous" procedural situation, no question was raised as to the amount of damages and the new trial was limited to the issue of liability. Mr. Justice (now Chief Justice) Jones filed a persuasive dissent in which Mr. Justice Chidsey joined. In *Swartz v. Smokowitz,* 400 Pa. 109, 161 A. 2d 330, the verdicts were grossly excessive and a new trial limited to the issue of damages was granted to the defendant, not the plaintiffs. See also *Hanus v. K. M. B. Construction Co.,* 392 Pa. 307, 140 A. 2d 454.

In our view of the case, there are two possible alternatives. One is to grant a new trial generally. While appellant's brief contains such a request, he did not file a motion for a new trial in the court below, and we are inclined to agree with Judge Alexander "that a retrial of the entire case is neither indicated nor warranted". The second alternative is to reverse the order granting a limited new trial, and to enter judgment in favor of the appellee and against the appellant on the verdict of the jury. So far as appellee is concerned, the alleged injustice of this substantial verdict does not "stand forth like a beacon". See *Elza v. Chovan,* 396 Pa. 112, 152 A. 2d 238. As Mr. Justice Bok indicates in that case, the mere fact that the court below would have been more generous to the plaintiff does not justify ousting the jurors and moving into their seats. Our conclusion is that the second alternative should be adopted.

The order of the lower court refusing to enter judgment n.o.v. is affirmed. The order of the lower court

granting a limited new trial is reversed, and judgment is here entered on the verdict.